NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                      Chapter 11

MARKETXT HOLDINGS CORP.,          Case No. 04-12078 (ALG)

                            Debtor.

---------------------------------------------------------------x

ALAN NISSELSON, as Chapter 11
Trustee of MARKETXT HOLDINGS CORP., and
the OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,
                                  Adv. Proc. No. 08-1102 (ALG)
                          Plaintiffs,

        -against-

KEVIN WALTZER and
STEWART F. GROSSMAN, trustee of the
Newton Trust,

                                 Defendants.
---------------------------------------------------------------x

A P P E A R A N C E S:

WINDELS MARX LANE & MITTENDORF, LLP
Attorneys for Alan Nisselson, Chapter 11 Trustee
  By:    Howard L. Simon, Esq.
           Regina Griffin, Esq.
156 West 56th Street
New York, New York 10019

KAYE SCHOLER LLP
Attorneys for the Official Committee of Unsecured Creditors
  By:    Lester M. Kirshenbaum, Esq.
           Margarita Y. Ginzburg, Esq.
425 Park Avenue
New York, New York 10022

EISEMAN LEVINE LEHRHAUPT
& KAKOYIANNIS, P.C.
Attorneys for Kevin Waltzer and Stewart F. Grossman,
Trustee of the Newton Trust
 By:   Eric R. Levine, Esq.
805 Third Avenue
New York, New York 10022

COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
Attorneys for Kevin Waltzer and Stewart F. Grossman,
Trustee of the Newton Trust
 By:   Laurence May, Esq.
900 Third Avenue
New York, New York 10022

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

### MEMORANDUM OF OPINION

Before the Court are motions relating to the claim filed by Kevin Waltzer ("Waltzer").[1] The issue is whether Waltzer's claim, filed on May 5, 2005 in the amount of $6,724,375.15, should be subordinated pursuant to § 510(b) of the Bankruptcy Code. For the reasons set forth below, the Court finds that the Claim falls within the terms of § 510(b) and must be subordinated.

### BACKGROUND

In 1996, Waltzer bought a 7½% equity interest in C.S. Block, later called Tradescape and later called MarketXT Holdings Corp (the "Debtor"), paying $250,000 for his shares. In December 1998, about two years later, Waltzer sold his interest back to the Debtor for $275,000. Waltzer later claimed that Omar and Sharif Amanat, the Debtor's representatives, had enticed him into accepting $275,000 for his interest by

---

[1] On February 15, 2008, the Clerk's office received notice that Waltzer had transferred his claim to Stewart F. Grossman as Trustee of the Newton Trust, the other defendant. Grossman is represented by the same counsel as Waltzer and takes the same position.

2

telling him that the company was in "extremely bad financial condition." (Reply Mem. of Law of Waltzer, citing State Court Amended Complaint at ¶¶ 83-165.) In fact, Waltzer claims, Omar and Sharif Amanat concealed that the Debtor had new financing available, which made the value of his ownership interest much greater. In October 1998, the Debtor had apparently entered into a memorandum of understanding with a venture capital firm for $26 million of new financing.

Waltzer commenced an action in the New York Supreme Court ("State Court") in July 2001 against Omar Amanat, Sharif Amanat, and the Debtor (the "State Court Defendants"), styled *Waltzer v. Tradescape & Co., L.L.C. f/k/a C.S. Block & Co., L.L.C., Tradescape New York, L.L.C., f/k/a C.S. Block New York, LLC, Omar Amanat, Sharif Amanat, Tradescape Corp., T.Corp, Tradescape Securities, LLC, and Tradescape Technologies, LLC.*, Index No. 60341/01. The Complaint charged that the State Court Defendants had fraudulently induced Waltzer to sell his shares, that Waltzer had reasonably relied on the Defendants' representations, and that he had sold his shares for much less than he would have but for the Defendants' fraud. He claimed damages based on the difference between the value of his investment at the time of the misrepresentation and what he actually paid.

On December 12, 2002, the State Court directed the Defendants to produce documents that Waltzer had demanded. The Defendants failed to produce the documents notwithstanding repeated directions from the State Court, and on December 11, 2003, the State Court struck the answer, entered a default, and ordered an inquest on the issue of damages. An inquest was held March 16, 2004, but entry of judgment was delayed by the commencement of this case by involuntary petition on March 24, 2004. This Court

subsequently modified the automatic stay on November 3, 2004, to allow the State Court proceedings to proceed to final judgment. The State Supreme Court had previously entered judgment for Waltzer and against the Amanat Defendants in the amount of $6,665,210 on October 5, 2004, and it entered judgment against the Debtor in the amount of $6,725,375.15 on January 11, 2005. (Nisselson Dec., Exh. 11, p.3.)

The State Court Defendants appealed. On July 20, 2006, the Appellate Division affirmed the State Supreme Court's finding of liability, but ordered that a new inquest on damages be held so that the State Court Defendants could have an opportunity to appear and offer proof in limitation of damages. A second inquest on damages was held in October and November of 2006. Ultimately the State Court entered an order, dated February 5, 2008, which held that Waltzer was entitled to damages of $6,665,210 plus post-judgment interest and costs. (Nisselson Dec., Exh. 11, p. 13.)[2]

Prior to certain of the State proceedings, on December 2, 2004, this Court entered an order converting the involuntary case to a voluntary Chapter 11 case. On May 5, 2005, Waltzer filed a proof of claim for the amount of the State judgment.

## DISCUSSION

The Trustee and Committee have moved for summary judgment on the issue of subordination. Waltzer moves to dismiss the Trustee's § 510(b) claims and does not dispute that the issue can be resolved on the uncontested facts. Since the record before the Court reveals no disputed issue of material fact, the Court can decide the issue on the instant record. In accordance with Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56, summary judgment may be granted "if the pleadings, depositions,

---

[2] The parties to this proceeding have also contested whether the Chapter 11 trustee received adequate notice of the inquest and whether he is bound by the findings on damages. This issue is not before the Court at this time.

4

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005).

> Section 510(b) of the Bankruptcy Code provides, in relevant part, that
>
> a claim arising from the purchase or sale of a security of the debtor or of an affiliate of the debtor, [or] for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock."

The scope of § 510(b) is broad. *Rombro v. Dufrayne* (*In re Med Diversified, Inc.*), 461 F.3d 251, 259 (2d Cir. 2006), citing *Baroda Hill v. Telegroup, Inc.* (*In re Telegroup, Inc.*), 281 F.3d 133 (3d Cir. 2002); *see also In re Enron Corp.*, 341 B.R. 141, 163 (Bankr. S.D.N.Y. 2006). Waltzer's claim asserts damages in connection with his sale of an ownership interest in the Debtor. The plain meaning of the statute covers Waltzer's claim, which is for fraud in connection with the sale of securities in the Debtor. As the Court said in *In re Worldcom, Inc.*, 329 B.R. 10, 14 (Bankr. S.D.N.Y. 2005), "So long as the nature of the damage or harm complained of by a shareholder can be said to result as a consequence of his having purchased or sold shares of stock or other securities of the debtor, the claimant falls within the scope of Section 510(b)." Waltzer's claim could not have arisen but for the sale of his stock, and it is appropriately subordinated. *In re Telegroup, Inc.*, 281 F.3d at 138.

Waltzer argues that his case is unique and is not covered by § 510(b) because he is not asserting that he was defrauded by the Debtor during the time of its lengthy descent

5

into bankruptcy but much earlier, when the Debtor's prospects were seemingly on the rise. The scope of 510(b) is not limited by the circumstances of the fraud or the length of time between the fraudulent activity and the petition date. Any such inquiry would contravene the policy underlying § 510(b), which is to limit the claims of equity investors in the subsequent bankruptcy of the enterprise. Equity investors have the most to gain— indeed, Waltzer claims that his $250,000 investment in the Debtor was worth millions of dollars two years later. But equity investors also have the most to lose, because their equity interests are paid last and Congress determined in § 510(b) that their fraud claims should not be permitted to compete with creditors' recoveries. *See Allen v. Geneva Steel Co.* (*In re Geneva Steel Co.*), 281 F.3d 1173, 1175-78 (10th Cir. 2002), discussing pre-510(b) practice and the impact on the 1978 Bankruptcy Code of Slain and Kripke, *The Interface Between Securities Regulation and Bankruptcy-Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors,* 48 N.Y.U. L.REV. 261 (1973); *see also In re Granite Partners, L.P.*, 208 B.R. 332 (Bankr. S.D.N.Y. 1997). In the words of one Court, § 510(b) demonstrates "strong congressional disapproval of investor fraud claims in bankruptcy." *In re Geneva Steel Co.*, 281 F.3d at 1179.

Waltzer also argues that he now has a judgment that should be recognized as a legitimate debt of this Debtor. This case was commenced by an involuntary petition on March 24, 2004 and on that date, Waltzer did not have a judgment but was merely a litigant in State Court. For § 510(b) purposes, Waltzer's rights should be determined as of the petition date. Just last month, the Second Circuit stressed that rights in a bankruptcy case should be determined as of that date. *COR Route 5 Co., LLC v. The*

6

*Penn Traffic Co.* (*In re The Penn Traffic Co.*), ___ F.2d ___, 2008 WL 1885328 at * 5 (2d Cir. April 29, 2008). As this Court previously held in another adversary proceeding in this case, "It is black letter law that claims are analyzed as of the date of the filing of a petition . . ." *Nisselson v. Softbank AM Corp.* (*In re MarketXT Holdings Corp.*), 361 B.R. 369, 389 (Bankr. S.D.N.Y. 2007), citing 5 *Collier on Bankruptcy* ¶ 506.04 (15th ed. rev. 2006).

Timing can be very important to the rights of parties in bankruptcy cases. In the *Softbank* adversary proceeding, cited above, the Court refused to allow the Chapter 11 Trustee in this case to "look behind" a note held by a creditor and subordinate it under § 510(b) on the ground that the debt had originated, years before, in a stock interest that was later converted into a note. *Softbank*, 361 B.R. at 389-90. It held that § 510(b) is not an avoidance provision and does not permit the Court to recharacterize a debt as equity simply because it once had originated in an equity interest. If Waltzer had converted to a debt interest before the petition date in a non-avoidable transaction, he would presumably have different rights. His judgment stands in a very different position for purposes of § 510(b). It did not become a lien. It liquidated the amount of Waltzer's damages, but as the definition of "claim" in § 101(5)(A) of the Bankruptcy Code indicates, a claim is a "right to payment, whether or not such right is reduced to judgment . . ." Section 510(b) subordinates a "claim" for damages in connection with the purchase or sale of a security of the debtor. By virtue of § 101(5)(A), such claim should be subordinated, "whether or not . . . reduced to judgment." In *In re Alta+Cast, LLC*, 301 B.R. 150, 152 (Bankr. D. Del. 2003), the post-petition entry of a judgment for the claimant did not save the claim from § 510(b) subordination but merely liquidated the claim.

7

Thus, even if the judgment had been entered prepetition, under the facts of this case, there is no reason to assume that Waltzer's rights would have improved. The weight of authority supports the principle that a judgment does not convert an equity interest into a claim for § 510(b) purposes. *See In re American Wagering, Inc.,* 326 B.R. 449, 452-53 (B.A.P. 9th Cir. 2005), *rev'd on other grounds*, 465 F.3d 1048 (9th Cir. 2006), *opinion withdrawn and superseded on rehearing*, 493 F.3d 1067 (9th Cir. 2007);[3] *Liquidating Trust of U.S. Wireless Corp., Inc. v. Mati Wax* (*In re U.S. Wireless Corp., Inc.*), ___ B.R. ___, 2008 WL 1757568 at *6 (Bankr. D. Del. Apr. 9, 2008); *Weissmann v. Pre-Press Graphics Co., Inc.* (*In re Pre Press Graphics Co., Inc.*), 307 B.R. 65, 72-73 (N.D. Ill. 2004); *In re Alta+Cast, LLC*, 301 B.R. at 154-55. Waltzer relies on *Burtch v. Gannon* (*In re Cybersight LLC*), 2004 WL 2713098 (D. Del. 2004), cited and distinguished by the *In re U.S. Wireless* Court. In *Cybersight*, the District Court affirmed a Bankruptcy Court order that had refused to subordinate under § 510(b) a claim based on a judgment for breach of an agreement pursuant to which the debtor was obligated to buy the claimant's shares. The claimant in that case, however, had obtained a final judgment over one year prior to the petition date, and for that and other reasons the Court found that the claimant's equity interest had been converted into a fixed debt obligation. Even if *Cybersight* is correct, Waltzer did not have a prepetition judgment and cannot avoid subordination on that ground.

---

[3] In *American Wagering*, the Ninth Circuit reversed the B.A.P.'s holding that the claim of a financial advisor, who had sued the debtor for damages in connection with his services in the debtor's initial public offering, arose from the purchase and sale of securities and should be subordinated under § 510(b). It did not disturb the Court's holding otherwise.

8

## CONCLUSION

For the reasons set forth above, Waltzer's claim must be subordinated under § 510(b). The Plaintiffs are directed to settle an appropriate order on two days' notice.

Dated: New York, New York
      May 22, 2008

                                                   */s/ Allan L. Gropper*
                                                   ALLAN L. GROPPER
                                                   UNITED STATES BANKRUPTCY JUDGE